UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

THOMAS WOODS,

                        Petitioner,

       -against-

GAYLE HAPONICK, Superintendent,
Green Haven Correctional Facility,

                        Respondent.

-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV-05-4374 (CBA) (JMA)

APPEARANCES:

      Paul Skip Laisure
      Appellate Advocates
      2 Rector Street, 10th Floor
      New York, New York 10006
      *Attorney for Petitioner*

      Eliot Spitzer
      Attorney General of the State of New York
      120 Broadway
      New York, New York 10271
            *By:*    *Luke Martland*
                    *Assistant Attorney General*
                    *Attorney for Respondent*

**AZRACK, United States Magistrate Judge:**

    By Order dated January 4, 2006, the Honorable Carol Bagley Amon, United States

District Judge, referred the above-captioned matter to me, pursuant to 28 U.S.C. § 636(b), for a

report and recommendation to determine Thomas Woods' ("Petitioner") petition for a writ of

habeas corpus.  Petitioner brings this application, pursuant to 28 U.S.C. § 2254, challenging his

adjudication as a discretionary persistent felony offender in New York Supreme Court, Queens

County, following a jury trial for charges of Attempted Burglary in the Second Degree and

Attempted Robbery in the Third Degree. Following his adjudication as a discretionary persistent felony offender, petitioner was sentenced to concurrent indeterminate prison terms of twenty years to life and fifteen years to life, respectively, and is currently incarcerated at Green Haven Correctional Facility. Petitioner alleges that the State violated his constitutional rights to a jury trial and due process when it sentenced him as a discretionary persistent felony offender based upon facts not submitted to a jury and proven beyond a reasonable doubt.

For the reasons contained herein, I respectfully recommend that petitioner's application for a writ of habeas corpus be denied. I further recommend that a certificate of appealability shall not issue.

## I. BACKGROUND

### A. Petitioner's Conviction and Sentence under Indictment No. 3036/98

During the early afternoon hours of July 11, 1998, petitioner gained access to an apartment building located at 97-05 103rd Avenue in Ozone Park, Queens. (Trial Tr. 259:15-25; 261:14-21.) Petitioner approached Shamroon Sewsanker ("Sewsanker") and Mary Spinelli ("Spinelli"), two neighbors having a conversation in the first-floor hallway. (Id. 261:12-18.) Petitioner told the women that he was a representative of Caldor Stores and asked them each to sign a petition to open a store in the local area. (Id. 262:21-263:12.) After both women signed the petition, Sewsanker returned to her apartment. (Id. 263:11-12.) A few minutes later, petitioner knocked on Sewsanker's door to ask if there was anyone else in her household who could sign the petition. (Id. 263:14-22.) When Sewsanker informed petitioner that there was no one else who could sign the petition, petitioner asked for a piece a paper. (Id. 264:6-9.) As soon as Sewsanker turned her back, petitioner entered the apartment, took a seat in the living room,

and proceeded to ask Sewsanker about her husband.  (Trial Tr. 265:4-10.)  Sewsanker told

petitioner that she was uncomfortable and asked him to leave her apartment.  (Id. 265:4-10.)

Petitioner rose from the chair and approached Sewsanker, who then started to scream.  (Id.

265:14-16.)  When petitioner put his hand over Sewsanker's mouth to prevent her from

screaming, she bit his hand and grabbed at his shirt.  (Id. 265:22-25.)  Petitioner then fled from

the scene.  (Id. 266:23-267:02.)

On August 20, 1998, after Sewsanker and Spinelli each identified petitioner from a line-

up, petitioner was arrested.  (Id. 272:23-274:13.)  Petitioner was subsequently indicted on

charges of Attempted Burglary in the Second Degree, in violation of New York Penal Law

§§ 110.00, 140.25(2), and Attempted Robbery in the Third Degree, in violation New York Penal

Law §§ 110.00, 160.05.[1]  On February 8, 2001, following a jury trial before the Honorable

Timothy Flaherty in New York Supreme Court, Queens County, petitioner was found guilty of

Attempted Burglary in the Second Degree and Attempted Robbery in the Third Degree.  (Trial

Tr. 475:16-23.)[2]

Petitioner appeared before Justice Flaherty for sentencing on April 11, 2001, at which

time he denied that he was a persistent felony offender and requested a hearing for a

---

[1]  Petitioner was also charged in a separate indictment with Burglary in the Second
Degree, in violation of New York Penal Law § 140.25(2), and Robbery in the Third Degree, in
violation of New York Penal Law § 160.05, for an unrelated incident that occurred four days
earlier, on July 7, 1998.  Petitioner proceeded to trial on February 1, 2001 on the charges
contained in both indictments.  (Trial Tr. 475.)

[2]  Petitioner was acquitted of Burglary in the Second Degree and Robbery in the Third
degree in connection with the incident on July 7, 1998.  (Id.)

determination on the matter.  (Sent. Tr. I  6:10-16.)[3]  Petitioner's attorney indicated that he had

no evidence bearing on the issue of whether petitioner should be sentenced as a persistent felony

offender.  (Id. 6:17-22.)  Justice Flaherty denied petitioner's request for a hearing, stating that

petitioner has "already been adjudicated by me at a prior proceeding as a [p]ersistent [f]elony

[o]ffender."  (Id. 6:23-25.)  After reading into the record an extensive summary of petitioner's

prior convictions, dating as far back as 1984, and the underlying facts of those convictions,

Justice Flaherty stated that he was "of the opinion that the history and character of the

[petitioner] and the nature and circumstances of his criminal conduct indicate that extended

incarceration and lifetime supervision will best serve the public interest."  (Id. 7:16-12:18; 15:6-

13.)  The prosecutor requested that the court impose a life sentence, stating:

> [t]his defendant has committed a crime every year or at least virtually
> every year he's been out of prison.  He has not benefited in any way
> from any lenient sentences he received in the passed [sic].  He is
> doing it as life in installments.  A few years here, a few years there,
> finally 9 to 18 years which obviously served no purpose.  He gets
> outs [sic] of jail and continues to commit these violent crimes against
> people in the community.

(Id. 12:26-13:11.)  Petitioner's attorney argued that, in the case currently before the court,

petitioner had not been convicted of violent felonies and urged the court to exercise its discretion

to "run this sentence concurrently to the 20 years to life" sentence that petitioner is currently

serving for a previous conviction under Indictment No. 2774/98.  (Id.  14:02-04.)

At the conclusion of the sentencing hearing, Justice Flaherty again found petitioner to be

---

[3]  All references to "Sent. Tr. I" are to the transcript of petitioner's sentencing proceeding
under Indictment No. 3036/98, held on April 11, 2001.  All references to "Sent. Tr. II" are to the
transcript of petitioner's sentencing proceeding under Indictment No. 2774/98, held on October
16, 2000.

a persistent felony offender and imposed a sentence of twenty years to life for petitioner's conviction of Attempted Burglary in the Second Degree and fifteen years to life for petitioner's conviction of Attempted Robbery in the Third Degree. (Sent. Tr. I 14:17-18; 15:14-18.) While these sentences are to run concurrently with each other, Justice Flaherty stated that they are to run consecutive to the terms of imprisonment previously imposed under Indictment No. 2774/98. (Id. 15:19-22.)

**B. Petitioner's Prior Conviction and Sentence under Indictment No. 2774/98[4]**

Prior to his conviction under Indictment No. 3036/98, petitioner was convicted in New York Supreme Court, Queens County, under Indictment No. 2774/98 for Robbery in the Third Degree, in violation of New York Penal Law § 160.05, and Possession of Stolen Property in the Fourth Degree, in violation of New York Penal Law § 160.45(1). On September 25, 2000, Justice Flaherty conducted a hearing to determine whether petitioner should be sentenced as a persistent felony offender.

At the hearing, the prosecutor introduced into evidence Certificates of Disposition for two of petitioner's previous convictions. (Hearing 6:7-19.)[5] The first was petitioner's conviction in 1984 for Attempted Burglary in the Third Degree under Indictment 2787/83, for

---

[4] Petitioner also filed an application for a writ of habeas corpus challenging his adjudication and sentence as a persistent felony offender under Indictment No. 2774/98. See Woods v. Poole, CV-03-5708 (DGT). In his previous petition, petitioner argued that his sentence as a discretionary persistent felony offender was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Ring v. Arizona, 536 U.S. 584 (2002), because it was based upon facts not submitted to a jury and proven beyond a reasonable doubt. In a Report and Recommendation to the Honorable David G. Trager, I recommended that petitioner's application for a writ of habeas corpus be denied.

[5] All references to "Hearing" are to the transcript of petitioner's persistent felony offender hearing under Indictment No. 2774/98, held on September 25, 2000.

which he was sentenced to a term of imprisonment of one to three years.  (Id. 7:6-8; 8:3-5.)  The second was petitioner's conviction in 1986 for Robbery in the First Degree under Indictment No. 5951/85, for which he was sentenced to a term of imprisonment of nine to eighteen years.  (Id. 7:10-11; 8:5-8.)  These convictions served as the basis for the two prior felony convictions required by N.Y. Penal Law § 70.10(2).

The prosecutor then introduced evidence pertaining to petitioner's history and character, also required by statute.  First, the prosecutor introduced Certificates of Disposition, as well as the minutes from petitioner's plea allocution and sentencing, for eight prior convictions for Robbery in the First Degree.  (Id. 8:15-10:15;15:19-16:10.)  Petitioner entered pleas of guilty to all of these crimes, which were charged in eight separate indictments, when he entered a plea of guilty to Robbery in the First Degree under Indictment No. 5951/85.  Second, the prosecutor introduced a certified letter from an identification specialist at the New York State Department of Criminal Justice to establish that the fingerprints in all of the prior cases did, in fact, match those of petitioner.  (Id. 10:21-11:3.)  Third, the prosecutor offered petitioner's "rap sheet" into evidence.  (Id. 14:3-16.)  Justice Flaherty considered the underlying facts of petitioner's convictions, read them into the record, and then stated:

> Somewhere [the defendant] actually had a gun.  Somewhere he had displayed a gun, several where he threatened the life of people.  He went, among other places, into a day care center, onto a school campus, into the rooms of-- or the homes of-- two women, at least, in the middle of the night, displayed and/or indicated that he had a gun.

(Hearing 23:11-17.)

Justice Flaherty determined that the People satisfied its burden of establishing that petitioner had two prior felony convictions.  (Id. 24:5-7.)  He further stated that "the history and

character of the defendant and the nature and circumstances of his criminal conduct and history

indicate that extended incarceration and lifetime supervision will best serve the public interest

and the Court, and I will impose a sentence authorized by statute for an [A-I] felony." (Id. 24:9-

14.)  In further assessing petitioner's history and character, Justice Flaherty noted that (1) the

probation department classified petitioner as a persistent felony offender who "has a lengthy

history of violent larcenist convictions;" (2) petitioner violated his parole on two occasions; and

(3) petitioner presented a "serious threat to the property and safety of the community, and the

outlook for his successful rehabilitation is poor." (Id. 24:15-25:1.)  At the conclusion of the

hearing, Justice Flaherty determined that petitioner was a persistent felony offender.  (Id. 25:2-

6.)

On October 16, 2000, Justice Flaherty sentenced petitioner to concurrent indeterminate

prison terms of twenty years to life and 15 years to life for convictions of Robbery in the Third

degree and Possession of Stolen Property in the Fourth Degree, respectively.  (Sent. Tr. II 6:11-

7:1.)

### C. Petitioner's Direct Appeal

Petitioner appealed his conviction under Indictment No. 3036/98 to the Appellate

Division, Second Department.  In his main brief, filed on January 31, 2003, petitioner argued

that his conviction was not supported by legally sufficient evidence.  (See Petition for Writ of

Habeas Corpus, filed Sept. 15, 2005, Ex. A.)  In his supplemental pro se brief, dated April 21,

2003, petitioner further argued that (1) the court lacked subject matter jurisdiction; (2) the New

York persistent felony offender statute violated Apprendi v. New Jersey, 530 U.S. 466 (2000),

the Due Process Clause of the Fourteenth Amendment, and the notice and jury trial guarantees of

the Sixth Amendment; and (3) the People were not ready for trial because the trial court lacked jurisdiction.  (See id., Ex. B at 2.)

On April 19, 2004, the Appellate Division held that "the verdict of guilt with respect to the crime of Attempted Robbery in the Third Degree was against the weight of the credible evidence" and vacated petitioner's conviction on that count.  People v. Woods, 6 A.D.3d 634, 635, 775 N.Y.S.2d 869, 870 (2d Dep't 2004).   The court, however, held that "it was satisfied that the verdict of guilt with respect to the [petitioner's] conviction of Attempted Burglary in the Second Degree was not against the weight of the evidence" and thus affirmed that conviction. Id.  The court further stated that the claims raised in petitioner's supplemental pro se brief "either are unpreserved for appellate review or without merit."   Id.

On May 14, 2004, petitioner sought leave to appeal to the New York Court of Appeals, requesting review of "all issues raised before the Appellate Division" and whether, in light of Ring v. Arizona, 536 U.S. 584 (2002), petitioner's "adjudication and sentence as a persistent felony offender violated his due process and Sixth Amendment rights, because the adjudication was based on facts not found by a jury beyond a reasonable doubt."  (See Pet., Ex. D at 1.)  By order dated June 16, 2004, the New York Court of Appeals denied petitioner leave to appeal. See People v. Woods, 3 N.Y.3d 651, 782 N.Y.S.2d 422 (2004).

**D.  The Instant Habeas Proceeding**

On September 15, 2005, petitioner filed the instant application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, requesting that this Court vacate his sentence and issue an "order that he be released from custody . . . if he is not resentenced as a second violent felony offender within 90 days before a different judge." (Pet. at 49.)  Specifically, petitioner argues that his

adjudication as a persistent felony offender was unconstitutional and violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), because it was based on facts that were not submitted to a jury and proven beyond a reasonable doubt.

## II.  DISCUSSION

### A.  Applicable Law and Standard of Review

#### 1.  AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 313 (2d Cir. 2001) (quoting <u>Aycox v. Lytle</u>, 196 F.3d 1174, 1178 (10th Cir. 1999)).  Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  <u>Williams v. Taylor</u>, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring and writing for the majority in this part).  Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court

identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." Overton v. Newton, 295 F.3d 270, 278 (2d Cir. 2002); see also Yung v. Walker, 341 F.3d 104, 111 (2d Cir. 2003) (amended opinion) (district court's habeas decision that relied on precedent from the Court of Appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. Torres v. Berbary, 340 F.3d 63, 72 (2d Cir. 2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## 2. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  In determining whether a procedural bar is sufficient to preclude habeas review, a federal court must consider as "guideposts" the following:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee v. Kemna, 534 U.S. 362 (2002)).

For federal review of a state court decision to be procedurally barred, "[t]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."  Harris v. Reed, 489 U.S. 255, 261-62 (1989) (citation and internal quotation marks omitted).  If a state court holding contains a plain statement that a claim is procedurally barred, then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative.  See id. at 264 n.10 ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

Here, the Appellate Division held that the "contentions raised in [petitioner's] supplemental pro se brief either are unpreserved for appellate review <u>or</u> without merit." <u>Woods</u>, 6 A.D.3d at 636, 775 N.Y.S.2d at 870 (emphasis added). In the Second Circuit, there has been some uncertainty as to whether this disjunctive language in the state court opinion operates as a procedural bar, thereby precluding federal habeas review, or whether it constitutes an adjudication on the merits, thus triggering a deferential standard of review under AEDPA. In <u>Fama v. Commissioner of Correctional Services</u>, 235 F.3d 804, 810 (2d Cir. 2000), the Second Circuit held that when a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." In <u>Ryan v. Miller</u>, 303 F.3d 231, 246 (2d Cir. 2002), the Second Circuit held that the use of "either/or" language in the state court decision established a merits-based determination and "[t]here is no reason to doubt that AEDPA applies . . . because the only alternative to finding the claim adjudicated on the merits would be finding the claim procedurally barred, in which case [the Court] would not have entertained [it] (absent a showing of cause and prejudice)." Conversely, in <u>Miranda v. Bennett</u>, 322 F.3d 171, 179 (2d Cir. 2003), the Second Circuit held that "a catch-all sentence stating that [petitioner's] 'remaining contentions are unpreserved for appellate review, without merit, or do not require reversal,'" does not mean that AEDPA deference is required. These holdings appear to leave an open question as to whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." <u>Shih Wei Su v. Filion</u>, 335 F.3d 119, 126 n.3 (2d Cir. 2003).

Neither party disputes that petitioner's <u>Apprendi</u> claim is preserved and that AEDPA's

deferential standard of review should apply.  (See Pet. at 30; Respondent's Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus ("Resp. Mem. of Law"), at 12-13.) Accordingly, in light of these facts, and the presumption against finding a state procedural bar, the state court decision should be construed as an adjudication on the merits and AEDPA deference applied.

### 3. Exhaustion of State Remedies

A petitioner has the additional procedural burden of proving that he has exhausted his claims in state court.  "An application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, the petitioner must first "fairly present" his federal claim to the highest state court from which a decision can be rendered, see Daye v. Attorney Gen. of New York, 696 F.2d 186, 190-91 n.3 (2d Cir. 1982) (en banc), that is, the petitioner must have informed the state court of "both the factual and the legal premises of the claim [asserted] in federal court."  Id. at 191.  "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."  Coleman, 501 U.S. at 731.

Here, petitioner argues, and respondent concedes, that petitioner properly exhausted his Apprendi claim.  (See Pet. at 46-47; Resp. Mem. of Law at 10.)  In his supplemental pro se brief, petitioner properly challenged his sentence to the Appellate Division, Second Department, arguing that "the sentence imposed upon him under [the persistent felony offender] statute violated the rule announced by the Supreme Court in Apprendi . . ."  (Pet., Ex. B at 16.)

Petitioner subsequently sought leave to appeal to the New York Court of Appeals and specifically requested that it review the Apprendi issues raised in petitioner's supplemental pro se brief. (See Pet., Ex. D at 1.) Having been fairly presented to the state's highest court with jurisdiction to consider the issue, petitioner's claim is exhausted.

### 4. Timeliness of Habeas Petition

Generally, a petitioner must file for an application for a writ of habeas corpus in federal court within one year of the date on which petitioner's state court conviction became final. See 28 U.S.C. § 2244(d)(1). Respondent concedes that petitioner's application was timely. (See Resp. Mem. of Law at 10.) Petitioner's conviction became final on September 20, 2004, the date on which his time to seek a writ of certiorari from the United States Supreme Court expired. See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). Therefore, petitioner had one year, or until September 20, 2005, to file his application for a writ of habeas corpus. Petitioner filed his petition on September 15, 2005 and it is therefore timely.

### B. The New York Persistent Felony Offender Statute

The statute at issue in this case is the New York persistent felony offender statute, N.Y. Penal Law § 70.10, which authorizes enhanced terms of imprisonment for certain recidivist felony offenders. Pursuant to the statute, the sentencing court has the discretion to impose the sentence authorized for a class A-I felony offense, notwithstanding the sentence ordinarily prescribed for the crime committed. See N.Y. Penal Law § 70.10(2). Class A-I felonies carry a minimum sentence of fifteen years to life and a maximum sentence of twenty-five years to life. See N.Y. Penal Law § 70.00(2)(a) & (3)(a)(i).

Before imposing an enhanced sentence, the sentencing court must first find that the

defendant is a persistent felony offender.  <u>See</u>  N.Y. Penal Law § 70.10(2).  A "persistent felony offender" is defined as an individual "who stands convicted of a felony after having previously been convicted of two or more felonies."  N.Y. Penal Law § 70.10(1)(a).  A finding that the defendant is a persistent felony offender, "must be based upon proof beyond a reasonable doubt by evidence admissible under the rules applicable to the trial of the issue of guilt."  N.Y. Crim. Proc. Law § 400.20(5).

Once the court has determined that the defendant is a persistent felony offender, it may impose the sentence authorized for a class A-I felony offense if the court is "of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest."  N.Y. Penal Law § 70.10(2).  "In such event the reasons for the court's opinion shall be set forth in the record."  <u>Id.</u>  Matters concerning the defendant's history and character "may be established by any relevant evidence, not legally privileged, regardless of admissibility under the exclusionary rules of evidence" by a preponderance of the evidence.  N.Y. Crim. Proc. Law § 400.20(5).

### C.  Merits of Petitioner's Claim

Petitioner argues that his adjudication as a persistent felony offender was unconstitutional under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), because it was based on facts not submitted to a jury and proven beyond a reasonable doubt.

In <u>Apprendi</u>, the Supreme Court invalidated a New Jersey statute as violative of a defendant's Sixth Amendment right to a jury trial because it authorized the sentencing judge to impose an enhanced term of imprisonment after making specific factual findings.  530 U.S. at

476. The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In so holding, the Court adhered to the "prior conviction" exception previously set forth in Almendarez-Torres v. United States, 523 U.S. 224, 243 (1998), where it held that recidivism did not qualify as an element of the crime that had to be proven to a jury beyond a reasonable doubt but rather, was "a traditional, if not the most traditional, basis for a sentencing courts increasing an offender's sentence."

In Ring, decided two years after Apprendi, the Supreme Court invalidated an Arizona statute that authorized the imposition of the death penalty in cases where the sentencing judge determined the existence of one or more aggravating factors. The Court held that "[c]aptial defendants, no less than noncapital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." Ring, 536 U.S. 589. Reiterating that "the dispositive question . . . 'is not one of form, but of effect' the Court stated, "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact-no matter how the State labels it-must be found by a jury beyond a reasonable doubt." Id. at 602 (citing Apprendi, 530 U.S. at 482-83, 494).

First, petitioner argues that his petition for a writ of habeas corpus should be granted because Almendarez-Torres, which set forth the "prior conviction" exception that was later upheld in Apprendi, has since been disavowed by a majority of the Supreme Court and "continued reliance on it would itself violate the Constitution." (See Pet. at 15-20.) Petitioner relies on Justice Thomas' concurring opinions in Apprendi, 530 U.S. at 520-21, and Shepard v. United States, 544 U.S. 13, 26 (2005), in which Justice Thomas stated that Almendarez-Torres

16

may have been incorrectly decided.  (See Pet. at 16-17.)  Petitioner's argument is unavailing. The fact remains that this narrow exception of a defendant's prior conviction remains the law unless and until the Supreme Court specifically rules otherwise.  See Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989); see generally, United States v. Estrada, 428 F.3d 387, 390 (2d Cir. 2005) (Almendarez-Torres "remains good law, and it is not within the purview of the Courts of Appeals 'to anticipate whether the Supreme Court may one day overrule its existing precedent.'") (citations omitted); United States v. Moore, 401 F.3d 1220,1224 (10th Cir. 2005) ("[W]e are bound by existing precedent to hold that the Almendarez-Torres exception to the rule announced in Apprendi . . . remains good law.") (citations omitted); United States v. Ordaz, 398 F.3d 236, 241 (3d Cir. 2004) ("Almendarez-Torres remains binding law.").

Second, petitioner argues that in assessing his "history and character" and the "nature and circumstances of his criminal conduct" pursuant to N.Y. Penal Law § 70.10(2), the sentencing court considered facts that had not been proven to a jury beyond a reasonable doubt, in violation of Apprendi.  (See Pet. at 20-29.)  In Brown v. Grenier, 409 F.3d 523 (2d Cir. 2005), the Second Circuit rejected several challenges to the constitutionality of the New York persistent felony offender statute.  The Court noted that the first finding, pertaining to a defendant's prior convictions, was expressly excepted from Apprendi's general rule that any fact that increases the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  Id. at 534. (citing Apprendi, 530 U.S. at 488-90).  As to the second finding, the Court concluded that an examination of a defendant's history and character to determine whether extended incarceration will "best serve the public interest" is "a vague, amorphous assessment" and,

unlike the statute at issue in Apprendi, the New York statute does not require the sentencing

judge to make any specific factual findings before imposing an enhanced term of imprisonment.

Id. at 534-35. Based on this distinction, the Court held that "the state court decisions were not

'contrary to, or . . . an unreasonable application of, clearly established Federal law.'" Id.

While petitioner attempts to buttress his argument by claiming that the principles set

forth in Blakely v. Washington, 542 U.S. 296 (2004) are applicable to his current habeas petition

to the extent that they explain and clarify the rule established Apprendi, his reliance on Blakely

is misplaced. The Second Circuit has held that Blakely is not retroactively applicable to cases on

collateral review.[6] See Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005). Furthermore,

the Second Circuit explicitly advised against adopting petitioner's argument when it stated, "our

appraisal of the reasonableness of the state court interpretations of Apprendi may not be

influenced by the Supreme Court's subsequent elucidation in such cases as Blakely v.

Washington . . . ." Brown v. Grenier, 409 F.3d at 533-34.

Next, petitioner argues that Brown v. Grenier is not controlling because the state court's

decision was contrary to, and an unreasonable application of, clearly established law as set forth

by the Supreme Court in Ring.[7] (See Pet. at 30-42.) In Brown v. Miller, 451 F.3d 54 (2d Cir.

---

[6] The issue of whether Blakely should be applied retroactively is currently before the United States Supreme Court. See Burton v. Waddington, 142 Fed. App'x 297 (9th Cir. 2005), cert. granted, 74 U.S.L.W. 3676 (U.S. June 5, 2006) (No. 05-9222).

[7] Petitioner concedes that Blakely does not constitute clearly established law and cannot be the basis for habeas relief because it was not decided until after petitioner's conviction became final. (See Pet. at 31 n.9.)

The Second Circuit has noted that the "Supreme Court has provided inconsistent guidance on the precise time to which a federal court should look to assess what was 'clearly established Federal law, as determined by the Supreme Court.'" Brown v. Greiner, 409 F.3d 523, 533 n.3 (2d Cir. 2005); see also Brown v. Miller, 451 F.3d 54, 57 n.1 (2d Cir. 2006). In Williams v. Taylor, 529 U.S. 363 (2000), Justice Stevens stated that clearly established law

2006), however, the Second Circuit explicitly rejected a challenge to the New York persistent felony offender statute under Ring. Emphasizing that the "general assessment" required by the New York statute is materially distinguishable from the judicial fact-finding that was at issue in Apprendi, the Court concluded that "Ring did not expound on the rule announced in Apprendi in a way that is significant" and held that "the state court did not unreasonably apply Ring in sentencing [petitioner] as a persistent felony offender." Id. at 59.

Petitioner's prior felony convictions were the "sole determinate of whether [petitioner was] subject to enhanced sentencing as a persistent felony offender." Rosen, 96 N.Y.2d at 335, 728 N.Y.S.2d at 410. While the sentencing court considered petitioner's "history and character" and the "nature and circumstances of his criminal conduct" in determining that an enhanced sentence was warranted, the enhancement was not contingent on the finding of any specific fact. The sentencing court simply engaged in an overall, general assessment of petitioner's past to reach its ultimate conclusion that an enhanced term of imprisonment would "best serve the public interest." Such a broad evaluation is not contrary to Ring. Based on the foregoing, it

_____

refers to "the time [petitioner's] state-court conviction became final." Id. at 390 (Stevens, J., writing for the majority in this part). However, Justice O'Connor stated that clearly established law is determined "as of the time of the relevant state-court decision." (O'Connor, J., concurring and writing for the majority in this part).
        Petitioner utilizes Justice O'Connor's formulation and adopts June 22, 2004, the date that the New York Court of Appeals denied petitioner leave to appeal, as the relevant date for determining what constitutes clearly established law. (See Pet. at 32.) Thus, Blakely, which was decided on June 24, 2004, would not be clearly established law for purposes of federal habeas review. Under Justice Stevens' formulation, the relevant date is September 20, 2004, the date petitioner's state court conviction became final, in which case Blakely would constitute clearly established law. In any event, the New York statute does not run afoul of Blakely because petitioner's sentence was enhanced solely on the basis of his two prior felony convictions, a fact that need not be found by a jury. People v. Rosen, 96 N.Y.2d 329, 335, 728 N.Y.S.2d 407, 410 (2001) ("It is clear . . . that the prior felony convictions are the sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender.").

cannot be said that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law.

Finally, petitioner argues that even if the New York persistent felony offender statute is constitutional under Apprendi and Ring, it was unconstitutional as applied to him because the sentencing court considered facts other than his prior convictions in sentencing petitioner to an enhanced term of imprisonment. (See Pet. at 42-45.) For the reasons previously stated, petitioner's argument is without merit.

In conclusion, petitioner's argument that his adjudication and sentence as a persistent felony offender was unconstitutional under Apprendi and Ring is without merit. Accordingly, his petition for a writ of habeas corpus should be denied.

## III. CONCLUSION

For the reasons set forth above, I respectfully recommend that Woods' petition for a writ of habeas corpus be denied. It is further recommended that a certificate of appealability shall not issue, as petitioner has failed to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: August 17, 2006
        Brooklyn, New York

                                              _____/s/_____
                                              JOAN M. AZRACK
                                              UNITED STATES MAGISTRATE JUDGE


Copies also sent to:

        Thomas Woods - # 00A5960
        Green Haven Correctional Facility
        Stormville, New York 12582
        *Petitioner*